# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA PELLECCHIA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ALLEGHENY COUNTY, ORLANDO HARPER, ) <br> and JASON BEASOM, ) <br> ) <br> Defendants. ) | Civ. A. No. 17-242 <br> Judge Nora Barry Fischer |

## **MEMORANDUM OPINION**

I.  INTRODUCTION

This is an employment case arising from Plaintiff Tara Pellecchia's (hereinafter "Plaintiff") termination from the Allegheny County Jail (the "ACJ"). Presently before the Court are cross-motions for summary judgment. Specifically, before the Court is Plaintiff's Motion for Summary Judgment on Counts I and II of the Second Amended Complaint and supporting documentation (Docket Nos. 47-49, 61), Defendants Allegheny County, Orlando Harper, and Jason Beasom's (hereinafter "Defendants") response thereto (Docket Nos. 53-54, 64), Plaintiff's reply (Docket No. 57), Defendants' Motion for Summary Judgment and supporting documentation (Docket Nos. 50-52), Plaintiff's response thereto (Docket Nos. 55-56), and Defendants' reply (Docket No. 58). The matter is fully briefed, and the Court heard oral argument on October 15, 2018 and reviewed the transcript filed of record on November 6, 2019.

At oral argument, the Court granted Plaintiff's oral motion for leave to correct her concise statements of material facts to comply with Local Rule 56, which Defendants did not oppose. (Docket No. 62 at 37-39). Plaintiff filed an amended statement of facts on October 19, 2018

(Docket No. 61), and Defendants filed a response that included additional material facts on November 15, 2018 (Docket No. 64). Plaintiff never responded to Defendants' additional facts.

Having considered the parties' positions and having evaluated the evidence in light of the appropriate standard governing motions for summary judgment, for the following reasons, Plaintiff's Motion for Summary Judgment on Counts I and II is denied and Defendants' Motion for Summary Judgment is granted, in part and denied, in part.

II. BACKGROUND

The Court must first address a matter regarding the parties' filings related to the concise statement of facts before addressing the relevant facts for purposes of the motions for summary judgment. Local Civil Rule of Court 56.E specifically provides that the facts claimed to be undisputed and material in "the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E (emphasis added).

In response to Plaintiff's amended concise statement of facts, Defendants filed a response that included additional facts. (Docket No. 64). Plaintiff never responded to these additional facts. Under these circumstances, in accordance with Local Civil Rule of Court 56.E, and for purposes of the present motions for summary judgment, Defendants' additional facts provided in their response to Plaintiff's Amended Concise Statement of Material Facts will be deemed admitted, specifically paragraphs 12 through 22. *See* 714 *Ventures, Inc. v. Nat'l Oilwell Varco, L.P.*, No. CV 15-925, 2016 WL 5919934, at *1 n.1 (W.D. Pa. Oct. 11, 2016) (deeming facts admitted for violation of Local Rule 56.E). Accordingly, the Court makes the following findings.

On November 30, 2013, Plaintiff, a corrections officer at the ACJ, called off work using FMLA leave to go on a cruise that she had known about for months. (Docket No. 56 ¶¶ 1, 5-7). When the ACJ learned of this, Plaintiff was terminated from her position. (*Id.* ¶ 8). Plaintiff grieved her termination and on December 29, 2014, the arbitrator permitted Plaintiff to return to work without back pay provided that she comply with the conditions set forth in her Last Chance Agreement ("LCA"). (*Id.* ¶¶ 9-13; Docket No. 51-1 at 67). Her LCA provides: "(1) Any further abuse of FMLA or sick leave shall result in the grievant's discharge, without access to grievance and arbitration procedure; and (2) The term of the [LCA] shall be two years from the date of this Award, after which it shall expire." (Docket Nos. 51-1 at 67; 64 ¶ 13). At the time Plaintiff signed the LCA, she was under the mistaken impression that she would have sick leave. (Docket No. 47-1 at 168).

Plaintiff left work early on March 13, 2015 and March 14, 2015. (Docket No. 56 ¶¶ 17-18). In response, the ACJ called a meeting with her on March 18, 2015, and Major Robyn McCall warned Plaintiff that the ACJ would only accept one additional doctor's excuse for leaving early and any further absences would be deemed a violation of her LCA and an attempt to circumvent the ACJ's Sick Leave Policy. (Docket Nos. 51-1 at 78; 56 ¶¶ 19-21). Nevertheless, between March 18, 2015 and October 19, 2015, Plaintiff left work early five times, four of which were unauthorized. (Docket No. 56 ¶ 23).

Thereafter, Plaintiff was in a serious motor vehicle accident and was hospitalized from October 19, 2015 until October 21, 2015 and again on October 22, 2015 to remove a stent. (*Id.* ¶¶ 25, 27-28). Plaintiff returned to work on October 27, 2015. (*Id.* ¶ 30). At the time of her accident, Plaintiff had no remaining Sick Leave, she was subject to the LCA, and had already received her final warning from Major McCall. (*Id.* ¶¶ 20, 29; Docket No. 64 ¶ 14). Upon her

3

return to work, Plaintiff provided medical documentation to the ACJ confirming her hospitalization. (Docket No. 56 ¶ 31). Included as part of that documentation was a note from Plaintiff's treating nurse explaining that she could return to work on October 26, 2015, and that she had no limitations. (*Id.* ¶ 32). Plaintiff stated that after she returned to work, she was afraid to ask for any accommodations out of fear of being terminated. (Docket No. 47-1 at 200). Plaintiff did not alert Defendants to any alleged disability affecting her job duties, and she continued to have the same expectations she had prior to the accident. (Docket No. 56 ¶¶ 38-39).

Additionally, Plaintiff explained that she was bruised from head to toe and had difficulty walking. (Docket Nos. 47-1 at 199-200). She testified that she had pain in her kidneys and stomach for months after her accident. (Docket No. 56 ¶¶ 42-43). However, she admitted that any pain or issues she had with her back and/or shoulder, which were exacerbated by the automobile accident, did not prevent her from working. (*Id.* ¶ 44).

On November 2, 2015, Plaintiff received a letter from Major Jason Beasom, scheduling a disciplinary hearing for November 5, 2015 for missing work from October 20, 2015 until October 24, 2015 in "violation of policy #15: Sick Leave/ Tardiness policy."[1] (Docket Nos. 47-3 at 2; 64 ¶¶ 4-6). The letter did not make any reference to allegations that Plaintiff left work early on certain

---

[1] The Policy provides:
  It is the policy of Allegheny County Jail to establish procedures for sick leave and tardiness in order to create a smooth, safe, secure, and orderly operation:
  A. The use of sick leave may be used by a correctional officer in compliance with the current contract between the Allegheny County Prison Employees Independent Union and Allegheny County per Article XII.
  B. Article XII-1. states that it should be understood by both employees and employer that sick leave is a benefit earned by service and is available when and if needed, and shall not be a "right of taking" such as vacation.
  C. The false or fraudulent use of sick leave creates an inherent danger and undue hardship to fellow correctional officers who must assume the workload, by working double shifts of those not in attendances [sic]. It is a contractual right of management to control excessive absenteeism or abuse of sick leave to enable management to effectively manage the institution.
(Docket No. 51-2 at 55).

4

occasions after March 18, 2015. (Docket No. 56 ¶ 50). Thereafter, Plaintiff learned she was eligible for FMLA leave and filed for FMLA leave for October 20, 2015 to October 24, 2015, intermittent leave for October 20, 2015 through October 19, 2016, and straight FMLA leave for any days she might have missed from November 4, 2015 to November 25, 2015. (Docket Nos. 47-4; 56 ¶ 52).

Prior to the hearing, Plaintiff learned that she was going to be fired. (Docket No. 47-1 at 203-04). At the hearing, Beasom explained the charges against Plaintiff including missing work from October 20, 2015 to October 24, 2015, without available sick time, and leaving work early five times (four of which were unauthorized). (Docket No. 56 ¶¶ 55, 57). Plaintiff allegedly left early on June 11, 2015; September 2, 2015; September 14, 2015; October 9, 2015; and October 19, 2015, and was unable to specifically explain why she had left early on any of these days outside of possibly the first date due to her daughter's false labor. (Docket No. 47-1 at 182-87). Plaintiff was able to proffer her side of the story at the hearing. (Docket No. 56 ¶ 58). At the hearing, Plaintiff informed Defendants that she had applied for FMLA leave. (*Id.* ¶ 59).

On November 5, 2015, following her disciplinary hearing, Allegheny County terminated Plaintiff due to her absenteeism. (Docket Nos. 56 ¶ 61; 64 ¶¶ 7, 17-18). Plaintiff's termination letter reads that she was terminated for violating both the sick leave/tardiness policy and her LCA by missing five days of work from October 20, 2015 through October 24, 2015 and for leaving early five times after receiving a warning from Major McCall on March 18, 2015 also in violation of the LCA. (Docket Nos. 47-2 at 13; 56 ¶ 61). Plaintiff's FMLA requests for October 20, 2015 to October 24, 2015 and intermittent leave for October 20, 2015 through October 19, 2016 were approved following her termination. (Docket No. 56 ¶ 68). Her request for FMLA leave from November 4, 2015 until November 25, 2015 was denied. (Docket No. 56 ¶¶ 69).

5

Following her termination, despite the language in her LCA, Plaintiff filed a grievance, which was upheld at the first level. (*Id.* ¶¶ 63-64; Docket No. 64 ¶ 19). On December 22, 2015, the County Manager's office upheld the grievance based on the days missed from October 20, 2015 through October 24, 2015 because Plaintiff's FMLA leave had been approved as to those days but denied it as to the five instances she had left early. (Docket No. 56 ¶¶ 65-66). The County Manager's Office upheld the termination based on Plaintiff's abuse of sick leave. (Docket No. 64 ¶ 22). The arbitrator then found her case inarbitable as she had agreed to forgo any grievance procedures as part of her LCA. (*Id.* ¶ 46; Docket No. 51-2 at 46). Plaintiff filed her Second Amended Complaint on August 7, 2017. (Docket No. 20).

The Court now turns to the legal standard to be implemented in reviewing the pending summary judgment motions.

III. LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Once the moving party satisfies its burden,

the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, deposition testimony, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

IV.  DISCUSSION

Both parties seek summary judgment as to Counts I and II of the Second Amended Complaint, Plaintiff's FMLA retaliation and interference claims. Additionally, Defendants seek summary judgment as to Counts III through IX, Plaintiff's 42 U.S.C. § 1983 due process claims, claims for violating the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. ch. 126 § 12101 et seq., and for violating the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. ANN. §§ 951 *et seq*. For the reasons that follow, both motions for summary judgment are denied

as to Counts I and II and Defendants' motion for summary judgment is granted as to Counts III through IX.

As to Plaintiff's FMLA retaliation claim, both parties' motions for summary judgment are denied because there are material issues of fact as to whether the adverse action was casually related to Plaintiff's invocation of her rights and whether the Defendants' actions were pretextual. The *McDonnell Douglas* three-part burden-shifting framework applies to FMLA retaliation claims that are based on circumstantial evidence. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). To prove a prima facie claim for retaliation, Plaintiff must establish that "(1) [s]he invoked [her] right to FMLA-qualifying leave, (2) [s]he suffered an adverse employment decision, and (3) the adverse action was casually related to [her] invocation of rights." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 152 n.6 (3d Cir. 2017). If Plaintiff can do so, the burden of production shifts to Defendants to provide a legitimate, non-discriminatory reason for their decision. *See Lichtenstein*, 691 F.3d at 302. If Defendants meet their burden, Plaintiff then must point to some evidence, direct or circumstantial, from which a reasonable factfinder could disbelieve Defendants' articulated legitimate reasons. *See id.*

Defendants contend that no reasonable jury could find that Plaintiff's termination was causally related to her invocation of rights or that there was pretext. (Docket No. 52 at 2-4). Plaintiff counters that summary judgment must be granted because all elements are met. (Docket No. 48 at 5-8). Defendants agree for purposes of this motion that Plaintiff invoked her right to FMLA qualifying leave and suffered an adverse employment decision.[2] (Docket No. 52 at 2 n.1). There are a variety of ways to satisfy the causally related element such as an unduly suggestive temporal proximity between the invocation of FMLA rights and the adverse action, "circumstantial

---

[2] Defendants actually assert that "[f]or [the] purpose of the pending Motion, only the third element (causal link) is disputed." (Docket No. 52 at 2 n.1).

evidence of a 'pattern of antagonism' following the protected conduct", and the like. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).

In this Court's estimation, there is evidence both in favor of and against causation.[3] On the one hand, the ACJ was aware at Plaintiff's *Loudermill* hearing, that she had applied for FMLA leave, had been in a serious accident, and was hospitalized for most of the time described in her hearing notice. (Docket No. 56 ¶¶ 31, 59). On the other hand, at the time of her termination, Plaintiff was on an LCA and had been warned that the ACJ would only accept one more doctor's excuse. (*Id.* ¶¶ 20, 29). Despite those warnings, Plaintiff proceeded to leave early five more times, four of which were unexcused. (*Id.* ¶ 23). Additionally, the ACJ began to initiate the termination process by scheduling a *Loudermill* hearing prior to Plaintiff requesting FMLA leave. (Docket Nos. 47-4; 56 ¶ 52). Thus, there is a clear issue of material fact as to causation.

The same evidence, when viewed as a whole, also establishes a material issue of fact as to pretext. To establish pretext, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Lichtenstein*, 691 F.3d at 310 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). Because material issues of fact exist as outlined above, both motions for summary judgment are denied as to Count I.

There is also an issue of material fact as to Count II, Plaintiff's FMLA interference claim. Defendants base their motion on their belief that the FMLA interference claim is duplicative of the FMLA claim and, therefore, cannot go forward, that Plaintiff was terminated for reasons

---

[3] The parties dispute whether Plaintiff can rely on transcripts of other cases. (Docket No. 58 at 3-4). The Court need not resolve this dispute because even without considering this evidence, there still is a material issue of fact.

9

unrelated to her FMLA rights, and no benefits were withheld. (Docket Nos. 52 at 6-7). Plaintiff again contends all elements of her cause of action are satisfied. (Docket No. 48 at 8-14). Of note, to establish a claim for FMLA interference, a plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Capps*, 847 F.3d at 155 (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014)). The Court of Appeals for the Third Circuit has repeatedly declined to resolve whether plaintiffs have a right to claim interference where the claim is "clearly redundant to the retaliation claim." *Lichtenstein*, 691 F.3d at 312 n.25 (explaining "It is not clear to us that Erdman necessarily guarantees that plaintiffs have an automatic right to claim interference where, as here, the claim is so clearly redundant to the retaliation claim . . . Since this issue was not raised below nor presented on appeal, we do not address it here"); *see Ross*, 755 F.3d at 192, 192 n.10 (explaining "Although Ross argues that his termination and the Addendum to his PIP—actions which were taken after his FMLA leave—amount to a denial of FMLA benefits, we have made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld"). As such, the Court permits the claim to proceed at this time.

With respect to the fifth element, as explained in the context of FMLA retaliation, there are facts favoring both parties concerning the reason for Plaintiff's termination. Those same facts again present a material issue of fact as to whether terminating Plaintiff effectively denied her benefits to which she was entitled. After all, she was terminated prior to receiving FMLA leave but there is also evidence to support the ACJ's contention that she was terminated for her disregard

of the Jail's sick leave policy and her LCA. (Docket Nos. 56 ¶¶ 61, 68; 64 ¶ 7). Therefore, both motions for summary judgment are denied as to this count.

Next, the Court holds that summary judgment is granted as to Counts III through VI of the Second Amended Complaint because a reasonable jury could not find that Defendants violated Plaintiff's Procedural Due Process rights. "To maintain a procedural due process claim, [plaintiff] must show that: (1) Defendants deprived [her] of an individual liberty interest that is encompassed within the Fourteenth Amendment's protection, and (2) the procedures [d]efendants made available to [her] did not provide due process of law." *Steele v. Cicchi*, 855 F.3d 494, 507 (3d Cir. 2017). As the Supreme Court established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), before a person with a protected property interest in her employment can be deprived of that interest, she must receive notice and an opportunity for a hearing appropriate to the nature of the case. *Id.* at 546 (internal quotation omitted).

While a pre-deprivation hearing may be "something less" than a full evidentiary hearing, the employee must receive "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Id.* at 546; *see also Gniotek v. City of Phila.*, 808 F.2d 241, 244 (3d Cir. 1986) (the "'two essential' requirements of due process, . . . are notice and an opportunity to respond"). "[F]or the informal discussion contemplated by *Loudermill* to be meaningful, the employee must be apprised of the nature of the charges against him or her before or at the time the hearing begins." *Moffitt v. Tunkhannock Area Sch. Dist.*, 160 F. Supp. 3d 786, 794 (M.D. Pa. 2016) (citing *Morton v. Beyer*, 822 F.2d 364, 371 (3d Cir. 1987)). The purpose of a pre or post-deprivation hearing is to "determine 'whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *Gilbert v. Homar*, 520 U.S. 924, 933 (1997) (quoting *Loudermill*, 470 U.S. at

545-46). "[D]ue process does not require a neutral, impartial decision-maker during the pre-termination hearing, provided the terminated employee has adequate post-termination proceedings before an impartial decision-maker." *Barnett v. Penn Hills Sch. Dist.*, Civ. Act. No. 2:16-cv-274, 2016 WL 2895136, at *7 (W.D. Pa. May 19, 2016).

Plaintiff opines that her written notice was insufficient because it did not make any reference to the allegations that she had left early on certain days. (Docket No. 55 at 7). However, prevailing case law establishes that as long as Plaintiff receives notice at the beginning of the hearing of additional charges, notice is sufficient. *See Moffitt*, 160 F. Supp. 3d at 793-94. Plaintiff conceded at her deposition that she received such notice at her *Loudermill* hearing. (Docket Nos. 47-1 at 182-87; 56 ¶¶ 55, 57). Plaintiff also takes issue with the fact that Major Beasom told her prior to the hearing before him that his intention was to fire her; yet, she does not suggest that she was unable to present her side of the story, in fact, she testified to the contrary. (Docket Nos. 55 at 7-8; 56 ¶ 58). She further contends her due process rights were violated because the deputy warden refused to meet with her after she filed a grievance but she has not suggested any facts that she would have put before the deputy warden that he did not already consider and she had contractually agreed to waive any grievance procedure as part of her LCA. (Docket Nos. 51-1 at 67; 55 at 9; 64 ¶ 13).[4] All told, Plaintiff has failed to meet her burden to produce sufficient evidence of a violation of her due process rights.

Alternatively, qualified immunity bars this claim. Government officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *See Dist. of*

---

[4] It bears mentioning that there is no evidence of record to suggest that Warden Harper had any personal involvement in the *Loudermill* hearing and his only involvement in the matter was his refusal to see Plaintiff after her termination. (Docket No. 47-1 at 263).

12

*Columbia v. Wesby*, ––– U.S. ––––, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citation omitted); *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011). As to the first prong, this Court has already rejected the factual predicate for Plaintiff's argument that Defendants violated a federal or statutory right. As to the second, Plaintiff has pointed to no authority that supports unlawfulness.

Because there is no underlying constitutional violation, Plaintiff's *Monell* claim against Allegheny County likewise fails. *See Ford v. Cty. of Hudson*, 729 F. App'x 188, 193 n.4 (3d Cir. Apr. 5, 2018) ("We are not persuaded. The County may only be held liable for a § 1983 claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), if there is an underlying constitutional violation and finding of individual liability"); *Berkery v. Wissahickon Sch. Bd.*, 99 F. Supp. 3d 563, 567-70 (E.D. Pa. 2015).

Summary judgment is also granted as to Counts VII through IX, Plaintiff's claims under the ADA and PHRA for actual disability discrimination, failure to accommodate, and regarded as disabled discrimination. Defendant Allegheny County correctly contends that there is insufficient evidence of record to establish Plaintiff had a disability within the meaning of the ADA or PHRA. (*See* Docket No. 52 at 16). "To satisfy the requirement of having a "disability," a plaintiff may demonstrate any one of: an actual mental or physical impairment that substantially limits one or more major life activities, a record of such impairment, or that his employer regarded him as having a disability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (applying the same standard for ADA and PHRA); *see Capps*, 847 F.3d at 157 (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)) (explaining "[a] plaintiff bringing [a] failure-to-accommodate claim must establish: '(1) [s]he was disabled and [her] employer knew it; . . ."); *Gavurnik v. Home Props., L.P.*, 712 F. App'x 170, 171 at n.1 (3d Cir. 2017); *Kelly v. Drexel*

*Univ.*, 94 F.3d 102, 109 (3d Cir. 1996); *see also Savidge v. Postmaster Gen. of U.S.*, 558 F. App'x 222, 226 (3d Cir. 2014) (The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action").

> (h) Physical or mental impairment means—
>
> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
> (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h)(1). "A nonpermanent or temporary condition cannot be a substantial impairment under the ADA." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). A non-chronic impairment that only lasts a few months is not considered to be a disability. *Macfarlan*, 675 F.3d at 274-75.

The only major life activity that Plaintiff suggests was substantially limited due to her accident was her walking, but she has not proffered any evidence that her infirmity was permanent.[5] Instead, Plaintiff complained only of bruising and transient pain and has not argued that her back pain or shoulder pain (the only two non-transient injuries she sustained) affected her

---

[5] This Court recognizes that Plaintiff has a history of anxiety, panic attacks, and migraine headaches for which she was on intermittent FMLA leave in 2013 and for which she had sought further FMLA leave in 2015. (Docket Nos. 47-1 at 101; 47-6). While Plaintiff has a history of anxiety, Plaintiff opted not to pursue this claim — indeed, Plaintiff's Second Amended Complaint does not even reference her anxiety (Docket No. 18); Plaintiff has proffered no medical evidence outside of her own testimony evidencing this "disability", and Plaintiff has failed to brief the issue entirely, instead, centering her disability claim on her difficulty walking (Docket No. 55). Despite the fact that this Court must construe "disabled" broadly, this Court cannot find Plaintiff's injury disabling on such a threadbare factual record and where counsel seemingly has consciously waived the issue by choosing not to develop it. *Parrotta v. PECO Energy Co.*, Civ. Act. No. 18-2842, 2019 WL 400598, at *10 (E.D. Pa. Jan. 31, 2019) (explaining "a plaintiff cannot establish disability relying solely on his own testimony without any medical documentation of his impairment at the time of the adverse action"); *see Yanoski v. Silgan White Caps Ams., LLC*, 179 F. Supp. 3d 413, 426 (M.D. Pa. 2016) (explaining "It is well-established that a party's failure to argue an issue on summary judgment constitutes a waiver of that issue").

walking.[6] (Docket No. 55 at 13). Thus, Counts VII through IX must be dismissed because Plaintiff has not demonstrated disability within the meaning of the Acts.

V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted, in part and denied, in part.

An appropriate Order follows.

*/s Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: March 5, 2019
cc/ecf: All counsel of record.

---

[6] Plaintiff has proffered no evidence of record of such impairment or that her employer regarded her as having a disability. Plaintiff returned to work without restrictions and continued to work with the same expectations following her accident as she did before. (Docket No. 56 ¶¶ 32, 38-39).